WOODFORD, WARDEN *v.* GARCEAU

No. 01–1862.   Argued January 21, 2003—Decided March 25, 2003

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, SCALIA, and KENNEDY, JJ., joined. O'CONNOR, J., filed an opinion concurring in the judgment, *post,* p. 210. SOUTER, J., filed a dissenting opinion, in which GINSBURG and BREYER, JJ., joined, *post,* p. 213.

*Janis S. McLean,* Supervising Deputy Attorney General of California, argued the cause for petitioner. With her on the briefs were *Bill Lockyer,* Attorney General of California, *Robert R. Anderson,* Chief Assistant Attorney General, *Jo Graves,* Senior Assistant Attorney General, and *Clayton S. Tanaka,* Deputy Attorney General.

*Lynne S. Coffin* argued the cause for respondent. With her on the brief were *Andrew S. Love* and *Denise Kendall.**

JUSTICE THOMAS delivered the opinion of the Court.

In *Lindh* v. *Murphy,* 521 U. S. 320 (1997), we held that amendments made to chapter 153 of Title 28 of the United States Code by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, do not apply to cases pending in federal court on April 24, 1996—AEDPA's effective date. In this case we consider when a capital habeas case becomes "pending" for purposes of the rule announced in *Lindh.*

I

Respondent Robert Garceau brutally killed his girlfriend Maureen Bautista and her 14-year-old son, Telesforo Bautista. He was convicted of first-degree murder and sentenced to death. The California Supreme Court affirmed respondent's conviction and sentence, *People* v. *Garceau,* 6 Cal. 4th 140, 862 P. 2d 664 (1993), and denied on the merits his petition for state postconviction relief. We denied certiorari. 513 U. S. 848 (1994).

On May 12, 1995, respondent filed a motion for the appointment of federal habeas counsel and an application for a stay of execution in the United States District Court for the Eastern District of California. The District Court promptly issued a 45-day stay of execution. On June 26, 1995, the District Court appointed counsel and extended the stay of execution for another 120 days. On August 1, 1995, the State filed a motion to vacate the stay, in part because respondent had failed to file a "specification of nonfrivolous issues," as required by local court rules. Brief for Respond-

---

*Kent S. Scheidegger* and *Charles L. Hobson* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging reversal.

*Leon Friedman, Jeffrey L. Kirchmeier,* and *Joshua L. Dratel* filed a brief for the Association of the Bar of the City of New York as *amicus curiae* urging affirmance.

ent 2. Respondent cured that defect, and, on October 13, 1995, the District Court denied the State's motion and ordered that the habeas petition be filed within nine months. Respondent filed his application for habeas relief on July 2, 1996.

Although respondent's habeas application was filed *after* AEDPA's effective date, the District Court, following Circuit precedent, concluded that the application was not subject to AEDPA. See App. to Pet. for Cert. 31–32 (citing *Lindh, supra; Calderon* v. *United States Dist. Ct. for the Central Dist. of Cal.*, 163 F. 3d 530, 540 (CA9 1998) (en banc), cert. denied, 526 U. S. 1060 (1999)). On the merits, however, the District Court ruled that respondent was not entitled to habeas relief. The Court of Appeals for the Ninth Circuit reversed. Like the District Court, the Ninth Circuit concluded AEDPA does not apply to respondent's application. 275 F. 3d 769, 772, n. 1 (2001). Unlike the District Court, however, the Ninth Circuit granted habeas relief for reasons that are not relevant to our discussion here. *Id.*, at 777–778. We granted certiorari. 536 U. S. 990 (2001).

## II

As already noted, we held in *Lindh* that the new provisions of chapter 153 of Title 28 do not apply to cases pending as of the date AEDPA became effective. *Lindh*, however, had no occasion to elaborate on the precise time when a case becomes "pending" for purposes of chapter 153 because in that case petitioner's habeas application had been filed prior to AEDPA's effective date. See *Lindh, supra*, at 323 (noting that petitioner filed his federal habeas application on July 9, 1992). Since *Lindh*, the Courts of Appeals have divided on the question whether AEDPA applies to a habeas application filed *after* AEDPA's effective date if the applicant sought the appointment of counsel or a stay of execution (or both) prior to that date. Five Courts of Appeals have ruled that AEDPA applies, see, *e. g., Isaacs* v. *Head*, 300 F. 3d 1232,

1245–1246 (CA11 2002); *Moore* v. *Gibson,* 195 F. 3d 1152, 1160–1163 (CA10 1999); *Gosier* v. *Welborn,* 175 F. 3d 504, 506 (CA7 1999); *Williams* v. *Coyle,* 167 F. 3d 1036, 1037–1040 (CA6 1999); *Williams* v. *Cain,* 125 F. 3d 269, 273–274 (CA5 1997), while the Court of Appeals for the Ninth Circuit has held it does not, *Calderon, supra,* at 539–540. For the reasons stated below, we agree with the majority of the Courts of Appeals.

Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, see *Williams* v. *Taylor,* 529 U. S. 362, 386 (2000) (opinion of STEVENS, J.) ("Congress wished to curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law"); see also *id.,* at 404 (majority opinion), and "to further the principles of comity, finality, and federalism," *Williams* v. *Taylor,* 529 U. S. 420, 436 (2000). One of the methods Congress used to advance these objectives was the adoption of an amended 28 U. S. C. § 2254(d). *Williams,* 529 U. S., at 404 ("It cannot be disputed that Congress viewed § 2254(d)(1) as an important means by which its goals for habeas reform would be achieved"). As we have explained before, § 2254(d) places "new constraint[s] on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Id.,* at 412. Our cases make clear that AEDPA in general and § 2254(d) in particular focus in large measure on revising the standards used for evaluating the merits of a habeas application. See *id.,* at 412–413; *Lindh, supra,* at 329 (noting that "amended § 2254(d) . . . governs standards affecting entitlement to relief"); see also *Early* v. *Packer,* 537 U. S. 3 (2002) *(per curiam)* (applying AEDPA's standards); *Woodford* v. *Visciotti,* 537 U. S. 19 (2002) *(per curiam)* (same).

Because of AEDPA's heavy emphasis on the standards governing the review of the *merits* of a habeas application,

we interpret the rule announced in *Lindh* in view of that emphasis, as have the majority of the Courts of Appeals. See, *e. g., Holman* v. *Gilmore,* 126 F. 3d 876, 880 (CA7 1997) ("[T]he motion for counsel is not itself a petition, because it does not call for (or even permit) a decision on the merits. And it is 'the merits' that the amended § 2254(d)(1) is all about"); *Isaacs, supra,* at 1245 (same); *Coyle, supra,* at 1040 (same). Thus, whether AEDPA applies to a state prisoner turns on what was before a federal court on the date AEDPA became effective. If, on that date, the state prisoner had before a federal court an application for habeas relief seeking an adjudication on the *merits* of the petitioner's claims, then amended § 2254(d) does not apply. Otherwise, an application filed after AEDPA's effective date should be reviewed under AEDPA, even if other filings by that same applicant—such as, for example, a request for the appointment of counsel or a motion for a stay of execution—were presented to a federal court prior to AEDPA's effective date.

A review of the amended chapter 153 supports our conclusion. For instance, § 2254(e)(1) provides that, "[i]n a proceeding *instituted by an application for a writ of habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." (Emphasis added.) Under the Ninth Circuit's view, the presumption established in § 2254(e)(1) would rarely apply in a capital case. If, as the Ninth Circuit held, a capital habeas case can be commenced (and, therefore, may become pending for purposes of *Lindh*) with the filing of a request for the appointment of counsel or a motion for a stay, then § 2254(e)(1), which by its terms applies only to a proceeding "instituted" by "an *application* for a writ of habeas corpus," would not apply to any capital prisoners whose first filing in federal court is a request for the appointment of counsel or a motion for a stay. This would make § 2254(e)(1) applicable only to those capital prisoners who did not need counsel and did not

seek a stay. AEDPA's text, however, contains no indication that §2254(e)(1) was intended to have such a limited scope. Nor is it reasonable to believe that Congress meant for a capital prisoner to avoid the application of the stringent requirements of §2254(e)(1) simply by filing a request for counsel or a motion for a stay before filing an actual application for habeas relief. Other provisions of chapter 153 likewise support our view. See, e. g., 28 U. S. C. §2241(d) (indicating that the power to grant a writ is not triggered except by "application for a writ of habeas corpus"); §2244(a) (providing that federal judges are not required to "entertain" a second or successive "application for a writ of habeas corpus" except as provided for by statute).

Finally, our conclusion is reinforced by the procedural rules governing §2254 cases. Federal Rule of Civil Procedure 3 explains that "[a] civil action is commenced by filing a complaint." The Federal Rules of Civil Procedure apply in the context of habeas suits to the extent that they are not inconsistent with the Habeas Corpus Rules. See 28 U. S. C. §2254 Rule 11; Fed. Rule Civ. Proc. 81(a)(2); *Pitchess* v. *Davis*, 421 U. S. 482, 489 (1975) *(per curiam)*. Nothing in the Habeas Corpus Rules contradicts Rule 3. The logical conclusion, therefore, is that a habeas suit begins with the filing of an application for habeas corpus relief—the equivalent of a complaint in an ordinary civil case.

## III

Respondent asks us to determine the scope of the rule announced in *Lindh* by looking at some of the provisions of chapter 154 of Title 28. But our task in this case is to apply *Lindh* to an action under chapter 153; thus, the precise phrasing of provisions in chapter 154 is inapposite to our inquiry here.

Moreover, respondent's argument that our holding in *McFarland* v. *Scott*, 512 U. S. 849 (1994), should inform our decision here is unpersuasive. To begin with, *McFarland* in-

volved the interpretation of § 2251, not § 2254, which is at issue here. And, as the Courts of Appeals have recognized, see *Isaacs*, 300 F. 3d, at 1242–1246 (collecting and discussing authorities), the Court's ruling in *McFarland* must be understood in light of the Court's concern to protect the right to counsel contained in 21 U. S. C. § 848(q)(4)(B). *McFarland*, 512 U. S., at 855 ("This interpretation is the only one that gives meaning to the statute as a practical matter"); *id.*, at 856 ("Requiring an indigent capital petitioner to proceed without counsel in order to obtain counsel thus would expose him to the substantial risk that his habeas claims never would be heard on the merits. Congress legislated against this legal backdrop in adopting § 848(q)(4)(B), and we safely assume that it did not intend for the express requirement of counsel to be defeated in this manner"); *id.*, at 857 ("Even if the District Court had granted McFarland's motion for appointment of counsel and had found an attorney to represent him, this appointment would have been meaningless unless McFarland's execution also was stayed"). Thus, *McFarland* cannot carry the day for respondent.

Similarly, the Ninth Circuit's and respondent's reliance on *Hohn* v. *United States*, 524 U. S. 236 (1998), is misplaced. In *Hohn*, we considered whether this Court has jurisdiction to review a court of appeals' denial of a certificate of appealability (COA). To answer that question we focused on the text of 28 U. S. C. § 1254, which "confines our jurisdiction to '[c]ases in' the courts of appeals." *Hohn, supra*, at 241 (citing *Nixon* v. *Fitzgerald*, 457 U. S. 731, 741–742 (1982)). Although we concluded that an application for a COA constituted a case within the meaning of § 1254, we did not provide an all-purpose definition of the term "case." Thus, while *Hohn* might support an argument that respondent's request for appointment of counsel and his motion for a stay of execution began a "case" that could be reviewed on appeal, see, *e. g., Gosier*, 175 F. 3d, at 506 ("[A] request for counsel is a 'case' in the sense that it is subject to appellate review (and,

if need be, review by the Supreme Court)"), it says nothing about whether a request for counsel or motion for a stay suffices to create a "case" that is "pending" within the meaning of the *Lindh* rule.

*　　*　　*

In sum, we hold that, for purposes of applying the rule announced in *Lindh*, a case does not become "pending" until an actual application for habeas corpus relief is filed in federal court. Because respondent's federal habeas corpus application was not filed until after AEDPA's effective date, that application is subject to AEDPA's amendments.[1] Accordingly, we reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.[2]

*It is so ordered.*

JUSTICE O'CONNOR, concurring in the judgment.

The Court today holds that the post-Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) version of 28

---

[1] JUSTICE O'CONNOR contends that we may have misapplied our test because a filing labeled "Specification of Non-Frivolous Issues" placed the *merits* of respondent's claims before the District Court before AEDPA's effective date. *Post*, at 211 (opinion concurring in judgment). That is simply not so. Respondent's "Specification of Non-Frivolous Issues" plainly stated that "[b]ased on a preliminary review of case materials, counsel believes the following federal constitutional issues exist in this case and are among the issues that *may* be raised on [Garceau's] behalf in a petition for habeas corpus." App. to Brief in Opposition 227 (emphasis added). The clear import of this language is that the filing itself did not seek any relief on the merits or place the merits of respondent's claims before the District Court for decision. Rather, the document simply alerted the District Court as to some of the possible claims that might be raised by respondent in the future. Indeed, the habeas corpus application respondent eventually filed contained numerous issues that were not mentioned in the "Specification of Non-Frivolous Issues."

[2] In view of the question on which we granted certiorari, we decline petitioner's request to rule on the merits of respondent's habeas application.

U. S. C. § 2254 applies to respondent Robert Garceau's habeas corpus application because Garceau did not file his application until after AEDPA's effective date. I agree with that holding. I concur only in the judgment, however, because in my view the Court's reasoning is broader than necessary.

The Court states that if "the state prisoner had before a federal court an application for habeas relief seeking an adjudication on the *merits* of the petitioner's claims, then amended § 2254(d) does not apply." *Ante*, at 207. Under the facts of this case, however, the Court may have misapplied its own rule. As the Court concedes, *ante*, at 204–205, the District Court had a pre-AEDPA filing setting forth the merits of Garceau's claims. After Garceau filed a motion for the appointment of counsel, motion for a stay, and motion for leave to file a habeas application, the District Court stayed Garceau's execution. Over the objection of the State, the District Court held that Garceau had identified nonfrivolous issues so that a stay of the execution was appropriate. It is difficult to see how the "merits" were not in front of the District Court at that time, which was well before AEDPA's effective date.

In addition, the Court does not adequately distinguish *McFarland* v. *Scott*, 512 U. S. 849 (1994). Although I dissented from that case, I also recognize that "the doctrine of *stare decisis* is most compelling" when the Court confronts "a pure question of statutory construction." *Hilton* v. *South Carolina Public Railways Comm'n*, 502 U. S. 197, 205 (1991). The Court here, however, appears to adopt the reasoning of the dissent in *McFarland*. Compare *ante*, at 208 ("Finally, our conclusion is reinforced by the procedural rules governing § 2254 cases"), with *McFarland, supra*, at 862 (O'CONNOR, J., dissenting in relevant part) ("The rules governing § 2254 cases confirm this conclusion"). I see no need to question the underpinnings of *McFarland* in this case, and I accept the holding of *McFarland* that an application for a writ

of habeas corpus is not necessary to trigger the beginning of a habeas proceeding.  See, *e. g.*, 28 U. S. C. §§ 2251, 2262.

I agree, however, with the Court's conclusion that the post-AEDPA version of § 2254 is applicable to Garceau's case. The text of § 2254 itself provides the answer.  Both before and after AEDPA, § 2254 has concerned *only* applications for a writ of habeas corpus.  Compare § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain *an application for a writ of habeas corpus . . .*" (emphasis added)) with 28 U. S. C. § 2254(a) (1994 ed.) (same).  Indeed, only the filing of an application for a writ of habeas corpus triggered the former version of § 2254(d).  See 28 U. S. C. § 2254(d) (1994 ed.) ("In any proceeding instituted in a Federal court by an application for a writ of habeas corpus . . .").  Thus, although Garceau's pre-application filings trigger a habeas corpus proceeding sufficient to permit the District Court to grant a stay under 28 U. S. C. § 2251 and to engage in other activity related to the case, these filings do not answer whether the pre- or post-AEDPA version of § 2254(d) applies here.  Because § 2254 has always spoken in terms of "applications," a case is pending for § 2254 purposes only when the prisoner files an *application* for a writ of habeas corpus.

I acknowledge that some language in *Lindh* v. *Murphy*, 521 U. S. 320 (1997), and in *McFarland, supra,* can be read to say that if a habeas case is pending before AEDPA, none of AEDPA's amendments apply—including the amendments to § 2254.  But these statements do not answer the question in this case.  If § 2254 applied to habeas proceedings other than applications for a writ of habeas corpus, the answer might well be different.  Compare 28 U. S. C. § 2251 (a judge, "before whom a habeas corpus proceeding is pending, may . . . stay any proceeding") with § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus . . .").  But as the Court correctly points out, *ante,* at 207–208, § 2254 applies only once a prisoner has filed "an application for a

writ of habeas corpus." §2254(a). See also §§2254(b)(1), 2254(b)(2), 2254(d), 2254(e)(1).

It does not follow from our case law, nor does it follow from the text of §2254 or any other habeas provision, that a habeas applicant can receive the benefit of the pre-AEDPA version of §2254 when §2254 itself cannot be triggered until the prisoner files an application for a writ of habeas corpus. A "case" simply could not have existed for purposes of §2254 until Garceau filed the application itself. Finally, Garceau has no reliance interest here. The pre-AEDPA version of §2254(d) specifically acknowledged that a habeas applicant was entitled to the then-existing less-restrictive version of §2254(d) only when the prisoner "instituted" a "proceeding . . . by an application for a writ of habeas corpus." 28 U. S. C. §2254(d) (1994 ed.).

Because 28 U. S. C. §2254 is triggered only when a prisoner files an application for a writ of habeas corpus, and because Garceau filed his petition after AEDPA's date, I concur in the judgment of the Court that the post-AEDPA version of §2254(d) governs his claim.

JUSTICE SOUTER, with whom JUSTICE GINSBURG and JUSTICE BREYER join, dissenting.

In modifying 28 U. S. C. §2254, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, did not specifically identify the state habeas cases that the amended statute would govern, except in certain capital cases subject to special rules not applicable here. *Lindh* v. *Murphy*, 521 U. S. 320, 326 (1997), held that in the statute's general application, the amendments cover only cases filed after AEDPA's effective date. Here we have to take the further step of deciding when a case is filed for purposes of the *Lindh* rule.

The majority focuses on 28 U. S. C. §2254 alone, which is fair enough where a habeas petitioner's first encounter with the district court occurs in filing the petition for habeas relief

itself. But this is not such a case. Garceau first entered the federal court to seek appointment of habeas counsel under 21 U. S. C. § 848(q)(4)(B), and his subsequently appointed lawyer then petitioned under 28 U. S. C. § 2251 for a stay of execution while preparing a habeas petition. I therefore think this case calls for the principle that related statutory provisions are to be read together, see, *e. g., Coit Independence Joint Venture* v. *FSLIC,* 489 U. S. 561, 573 (1989) (citing *Brown* v. *Duchesne,* 19 How. 183, 194 (1857)). AEDPA's amendment of § 2254 ought to be understood in light of § 2251.

When counsel, appointed to prepare and litigate a habeas petition under § 2254, seeks a stay of execution under § 2251, the district court will at some point condition the continuation of any stay on its assessment of the substantiality of the issues counsel expects to raise in the petition yet to be filed, a judgment that will call for some consideration of standards for federal relief in cases governed by § 2254. When a district court's exercise of jurisdiction for habeas purposes occurs during the transition from an earlier to a later version of § 2254, it makes sense to hold that the version to be applied in a given case is the one in effect when the habeas court first takes account of § 2254 standards for habeas relief. A case should thus be considered filed for purposes of the *Lindh* rule by the time the habeas court makes a determination that takes standards for federal relief into consideration.

When the District Court took its initial look at anticipated claims in this case, for example, it was clear that the habeas petition might well be filed before the effective date of the amendment to § 2254; it was thus appropriate for the District Court to consider the possible merit of the claim in light of the earlier, existing law. As a consequence, it would be reasonable to apply that law throughout. There would not be much point, after all, in relying on existing law to judge the merits of a stay, if counsel could not rely on existing law in preparing the case. Otherwise the court could be staying

a case that might be hopeless under the later, more restrictive, law; or conversely, would be forcing counsel to stint on responsible preparation, in order to assure that a petition subject to the earlier law be filed before AEDPA's general effective date. I would therefore hold that the earlier version of § 2254 should apply throughout a habeas proceeding if the habeas court that issued a § 2251 stay took its preliminary look at the prospects for habeas success prior to AEDPA's effective date.

In this case, that first look occurred six months before the amendment's effective date, and I would accordingly hold the pre-AEDPA law applicable here. I respectfully dissent.